## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN OSTEOPATHIC ASSOCIATION; | ) | |
| JOANNE BAKER, DO; JODY BENTLEY,  DO; | ) | |
| ERICA KUHN, DO; JUDITH LIGHTFOOT, DO; | ) | |
| KATRINA PLATT, DO; TROY RANDLE, DO; | ) | |
| and KEITH REICH, DO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| AMERICAN BOARD OF INTERNAL | ) | **Jury Trial Demanded** |
| MEDICINE, | ) | |
| | ) | |
| Defendant. | ) | |

## Complaint

Plaintiffs American Osteopathic Association ("AOA"); Joanne Baker, DO; Jody Bentley,

DO;  Erica Kuhn, DO; Judith Lightfoot, DO; Katrina Platt, DO; Troy Randle, DO; and Keith

Reich, DO (collectively, the "Program Director Plaintiffs" and together with AOA, "Plaintiffs")

complain against Defendant American Board of Internal Medicine ("ABIM") as follows:

1.      For at least five years, osteopathic physicians who are certified by the AOA's

internal medicine specialty certifying board (*i.e.*, American Osteopathic Board of Internal

Medicine ("AOBIM")) have developed, overseen and improved internal medicine residency

programs and fellowships, and have been able to qualify residents to take and pass examinations

offered by osteopathic and allopathic certifying boards, including the ABIM examination.  Now,

however, ABIM has announced a requirement that will strip those osteopathic physicians of the

ability to qualify and prepare residents for ABIM's internal medicine board examination, despite

the fact that ABIM's arbitrary requirement does not result in any qualitative difference in the

qualifications of Program Directors or residents and fellows in their programs.  As a result,

numerous osteopathic physicians who serve as Program Directors of residency and fellowship programs will become disqualified and will lose their jobs, unless they take and pass the ABIM examination and maintain their ABIM certification.  Moreover, the requirement disparages the reputation of AOA's internal medicine certifying board, AOBIM, and thereby discourages residents from seeking certification from AOA's specialty certifying boards.  ABIM's requirement also diminishes the reputation of AOBIM-certified osteopathic physicians, who are qualified and available to provide medical services to patients who already do not have adequate access to quality medical care and oversee the training of other physicians to do so.

2.     To prevent the unlawful, deceptive, and unfair competition that ABIM's requirement causes, and the harmful impact of ABIM's requirement on Program Directors, residents, fellows, patients, and AOA, Plaintiffs seek injunctive relief to prevent ABIM's requirement from taking effect.  Plaintiffs also seek a declaration that through its arbitrary requirement, ABIM unjustifiably interferes in Program Directors' business relationships with the hospitals and medical centers they serve, and in AOA's anticipated relationships with, and the value that it provides to, Program Directors and other current and future physicians certified by AOA's specialty boards.  Plaintiffs also seek an order that ABIM's requirement unjustly enriches ABIM to the significant detriment and expense of Program Directors and AOA.  Finally, Plaintiffs seek to prevent the damages that they will incur because the ABIM requirement and announcement disparage the reputation of osteopathic physicians who serve as Program Directors who are AOBIM-certified and discredit the legitimacy of AOA's certifying boards.

### *The Parties*

3.     AOA is an Illinois not-for-profit corporation with its principal place of business located at 142 East Ontario Street, Chicago, Illinois.  AOA represents more than 151,000

osteopathic physicians and medical students, advancing the philosophy and practice of

osteopathic medicine. Among other products and services, AOA offers a program of specialty

board certification in internal medicine and the subspecialties of internal medicine through its

AOBIM.

4.      Joanne Baker, DO, is a resident of the State of Michigan.

5.      Jody Bentley, DO, is a resident of the State of Virginia.

6.      Erica Kuhn, DO, is a resident of the State of California.

7.      Judith Lightfoot, DO, is a resident of the State of New Jersey.

8.      Katrina Platt, DO, is a resident of the State of California.

9.      Troy Randle, DO, is a resident of the State of New Jersey

10.      Keith Reich, DO, is a resident of the State of Illinois.

11.      ABIM is a physician-led, non-profit, independent evaluation organization that

certifies physicians practicing internal medicine and its 21 subspecialties.  ABIM certifies

approximately one of every four physicians in the United States.  On information and belief,

ABIM is an Iowa non-profit corporation with its principal place of business located at 510

Walnut Street, Philadelphia, Pennsylvania.  Upon information and belief, ABIM administers its

certification examinations in internal medicine and the subspecialties of internal medicine to

physicians in all 50 states.

*Jurisdiction and Venue*

12.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332(a)(1).  The parties are citizens of different states and the amount in controversy exceeds

$75,000.

13.     This Court has personal jurisdiction over ABIM because it is headquartered in Philadelphia, Pennsylvania.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1).

*Facts*

**Osteopathic Medicine**

15.     Osteopathic medicine is a distinct approach to medical care.  The osteopathic philosophy of medicine builds from four fundamental tenets:  (1) the body is a unit; the person is a unit of body, mind, and spirit; (2) the body is capable of self-regulation, self-healing, and health maintenance; (3) structure and function are reciprocally interrelated; and (4) treatment of patients should be based on an understanding of these principles.

16.     The first osteopathic medical school, the American School of Osteopathy, was established in 1892.

17.     Osteopathic schools are often established in rural and other medically underserved areas in an effort to bring medical care to underserved populations.  At present, there are 17 osteopathic schools in rural and medically underserved areas in the United States.

18.     Individuals who graduate from osteopathic medical school earn Doctor of Osteopathic Medicine ("DOs") degrees.  DOs are licensed throughout the United States for the full scope and practice of medicine and surgery, including prescription authority.

19.     Though the degree is different, osteopathic medical education follows the same structure as allopathic medical education, through which students earn medical doctorates ("MDs").  Specifically, DOs must complete a four-year post-baccalaureate medical program at a college of osteopathic medicine accredited by the AOA's Commission on Osteopathic College Accreditation ("COCA").  Afterwards, DOs complete postdoctoral training, which includes a

4

residency in a specific primary care or specialty field and may also include a fellowship in a specific subspecialty practice area or areas. Finally, after completing residency training, most DOs choose to become board certified within their specialty and subspecialty areas.

20.     Osteopathic medicine is growing rapidly. While less than 15 percent of the current physician workforce in the United States are DOs, approximately a quarter of medical students in the United States are enrolled in colleges of osteopathic medicine.

### American Osteopathic Association

21.     AOA is a member association that represents osteopathic physicians, resident physicians, and students. It also accredits colleges of osteopathic medicine and administers a program of specialty board examinations. Historically, AOA also accredited osteopathic residency training programs.

22.     Among its other goals, AOA is committed to protecting and promoting the rights of osteopathic physicians, including advancing legislative and regulatory improvements to enhance practice rights of osteopathic physicians and promoting access to care from osteopathic physicians.

23.     AOA also supports DOs in their efforts to provide patients with quality, cost-effective care.

24.     AOA collects dues from its members to help advance its mission and these goals.

25.     Further, through its specialty certifying boards, AOA offers board certification to osteopathic physicians in their chosen specialties, such as internal medicine, family medicine, pediatrics, obstetrics and gynecology, emergency medicine, and surgical specialties.

26.     AOA collects examination fees from the individuals who take these board examinations. In addition to the initial examination fees, certified physicians are expected to

retain their certification through participation in the osteopathic continuous certification program, for which there are also fees.  These fees provide support for AOA to develop and administer rigorous, psychometrically valid board certification examinations.

27.     The AOBIM is AOA's certifying board for the certification of physicians who practice general internal medicine or fourteen internal medicine subspecialties (*e.g.*, Cardiology, Critical Care Medicine, Endocrinology, Gastroenterology, Geriatric Medicine, Hematology, Infectious Disease, Nephrology, Oncology, Pulmonary Disease, Rheumatology).

28.     DOs who complete an accredited residency program in internal medicine thus may take the AOBIM board examination.  Those DOs who pass the AOBIM examination are board-certified by the AOA through the AOBIM.

29.     As previously mentioned, AOA is also the recognized accreditation agency for osteopathic medical schools through COCA, which has been nationally recognized as such by the U.S. Department of Education and its predecessor, the Department of Health Education and Welfare, since 1952.

30.     AOA depends on the continued support and growth of its member base and engaged members as well as revenues from AOBIM and other board certification programs to help fulfill its mission and goals, and remain an impactful, successful, and vibrant organization.

**Relationship Between DOs and MDs**

31.     Historically, the organized MD community opposed osteopathic medicine.  From the origins of osteopathic medicine in the late 19th century until the late 1960s, the American Medical Association ("AMA") questioned the legitimacy and authority of DOs, and took the position that DOs should not be allowed to practice medicine with the same authority and opportunities afforded MDs.

32.     Further, DOs were not eligible for membership in the AMA.

33.     In 1963, the U.S. Civil Service Commission announced that for its purposes, which included selecting federal employees based on merit, MD and DO degrees would be considered equivalent.

34.     In 1966, U.S. Department of Defense Secretary Robert McNamara issued an order specifically allowing osteopathic physicians to serve as physicians and surgeons in the military medical corps for all branches of the armed forces.

35.     Finally, in 1969, the AMA changed its rules governing residencies to allow the residency programs it accredited to accept DO's.

36.     Around the same time, many of the American Board of Medical Specialties ("ABMS") boards similarly changed their rules to allow osteopathic physicians who completed residency training accredited by the allopathic accrediting agency (*i.e.*, ACGME) to qualify for board certification.

### Former Dual Accreditation and Board Certification System

37.     Historically there has been a parallel but separate certification system for DOs and MDs, in which DOs were certified by specialty boards associated with AOA Bureau of Osteopathic Specialists ("BOS"), and MDs were certified by specialty boards associated with the ABMS.

38.     Under the dual accreditation and certification system, osteopathic physicians received their medical education in schools accredited by COCA (and COCA's predecessor, the AOA Bureau of Professional Education), completed graduate medical education in programs accredited by AOA's Council on Postdoctoral Training, and received certification from specialty boards associated with BOS.

7

39. Similarly, allopathic medical students attended medical schools accredited by the Liaison Committee on Medical Education, completed residency training in programs accredited by the ACGME, and received certification from specialty boards associated with the ABMS.

40. For both the ABIM and the AOBIM, residents are required to complete accredited residency training in the applicable medical discipline, be licensed to practice, and pass the board examination to become board-certified and then must maintain their certification through ABIM's Maintenance of Certification program or AOBIM's Osteopathic Continuous Certification program. The primary difference was that ABIM required that residents complete ACGME-accredited training, whereas AOA would certify osteopathic physicians with training in either an AOA- or ACGME-accredited residency.

41. Despite the parallel systems, the curricular requirements for AOA and ACGME residency programs have been very similar. The primary distinction between the two from a curricular standpoint is that AOA programs include application of osteopathic principles and practice to the specific specialty in addition to the traditional training.

42. From a structural standpoint, osteopathic residency programs had fewer residents and were typically located in smaller, community-based hospitals, whereas ACGME programs were often located in large academic medical centers.

43. There also has been parallel qualification for allopathic and osteopathic board certification.

44. AOBIM board certifications require a DO degree, successful completion of an AOA- or ACGME-accredited residency training in internal medicine, licensure in good standing in the state in which the physician practices, and passage of a rigorous psychometrically valid certifying examination.

45.     Similarly, ABIM board certification requires an MD or DO degree, successful completion of an ACGME-accredited residency training program in internal medicine, licensure in good standing in the state in which the physician practices, and passage of a rigorous psychometrically valid examination.

46.     Both osteopathic and allopathic residency programs are led by Program Directors. Program Directors are responsible for oversight of the delivery of the curriculum for residency programs and making certain that the residents receive the necessary clinical experiences.

47.     Historically, Program Directors and training faculty for osteopathic residency programs in internal medicine were DOs certified by the AOBIM.  Similarly, under the dual accreditation system, Program Directors and training faculty in allopathic residency programs in internal medicine were MDs certified by the ABIM.

**Current Single Accreditation System.**

48.     The AOA and ACGME offered separate accreditation programs for graduate medical education until February 2014.

49.     In February 2014, the AOA and ACGME entered into an agreement to combine their graduate medical education programs into a single accreditation system.

50.     The agreement to combine programs was implemented in phases over five years, beginning in 2015.

51.     Under the agreement, AOA and the American Association of Colleges of Osteopathic Medicine have become institutional members of ACGME, joining the ACGME's other five institutional members (AMA, American Hospital Association, American Association of Medical Colleges, Council of Medical Specialty Societies, and ABMS).  Individual certifying boards like ABIM are not institutional members of ACGME.

9

52.     The agreement to combine accreditation systems was limited to residency training, meaning that the osteopathic community maintains separate medical schools, licensing exams, and certifying boards.

53.     During the five-year transition process, previously osteopathic residency training programs were required to apply for accreditation from ACGME under the new single accreditation system.  AOBIM-certified Program Directors in osteopathic programs retained their positions during the transition.

54.     During the transition to single accreditation, the ACGME approved and implemented an amendment to its Program Requirements in all specialties, including internal medicine and internal medicine subspecialties, to allow physicians with osteopathic board certification to serve as Program Directors in ACGME residency programs and thus prepare residents for allopathic or osteopathic certifying examinations.

55.     Similarly, ACGME also amended its Program Requirements to include passage of the AOA or ABMS certifying boards as appropriate outcomes for consideration by the Program Evaluation Committees in measuring performance of programs.  In further recognition of the parity between AOBIM and ABIM certification, the amendments to the program requirements for internal medicine specifically provide that "The program director should encourage all eligible program graduates to take the certifying examinations offered by the American Board of Medical Specialties (ABMS) member board or American Osteopathic Association (AOA) certifying board."

## Internal Medicine Certification – ABIM Requirement

56.     Program Directors and training faculty for osteopathic programs in internal medicine have historically been DOs certified by the AOBIM.

10

57.     In contrast, Program Directors and training faculty in ACGME programs in internal medicine have been MDs certified by the ABIM.

58.     Under the ACGME's Common Program Requirements, AOBIM-certified Program Directors are qualified to oversee the training of residents and prepare them to take the AOBIM board certification examination or the ABIM board certification examination:

> II.A.3.  Qualifications of the program director:
> . . .
> II.A.3.b) must include current certification in the specialty for which they are the program director by the American Board of [Practice Area] or by the American Osteopathic Board of [Practice Area], or specialty qualifications that are acceptable to the Review Committee.

ACGME Common Program Requirements, available at http://www.acgme.org/Portals/0/PFAssets/ProgramRequirements/CPRResidency2019.pdf.

59.     The ABIM does not have jurisdiction to set accreditation standards for residency training or otherwise determine qualifications for Program Directors.

60.     However, in 2017, the ABIM announced a rule change requiring that all Program Directors for ACGME internal medicine residency programs – including osteopathic internal medicine residency programs – pass the ABIM examination in order for graduates of the residency program to be considered eligible to take the ABIM examination (the "ABIM Requirement").

61.     Thus, whereas Program Directors of osteopathic residency programs in internal medicine historically were certified by the AOA through the AOBIM, under the ABIM Requirement, all Program Directors for residency programs in internal medicine will be required to pass the ABIM examination and maintain ABIM certification.

62.     Any Program Directors who are not certified by the ABIM must pass the ABIM examination in order to certify their internal medicine residents as qualified to take the ABIM examination.

63.     Program Directors who are not ABIM certified by 2022 will be precluded from certifying residents to take the ABIM board examination and may lose their positions.  If Program Directors continue to be employed as Program Directors, residents in their programs will not be eligible for ABIM certification.

64.     The ABIM Requirement announcement states:

Beginning in July 2015, for residents and fellows who begin training in an AOA-accredited program which receives ACGME accreditation before graduation, all satisfactorily completed years of training will be accepted towards ABIM's initial certification eligibility requirements. To be granted admission to an ABIM certification examination, candidates must meet all applicable training, licensure, professional standing and procedural requirements.

Through its tracking process, FasTrack®, ABIM requires verification of trainees' clinical competence from an ABIM certified program director (other ABMS Board and Canadian certification is acceptable, if applicable). In support of the Single GME Accreditation System, ABIM recognized the need for a change in eligibility policies to allow program directors of newly accredited programs to become certified by ABIM and for a transition period (2016-2021) to allow them to do so. If the program director of a program achieving accreditation through the Single GME Accreditation System is not currently certified by ABIM in the discipline for which he or she is program director, there is now a Special Consideration Pathway which will allow the program director to become certified by ABIM.

During the 2016-2021 transition period, ABIM will accept attestations for ABIM initial certification eligibility criteria from those who are program directors through the Single GME Accreditation System, but who have not yet become ABIM certified. Beginning in 2022, all attestations to ABIM initial certification eligibility criteria will need to come from program directors who are ABIM certified. For additional information, please see the "Clinical Competence Requirements" section under each certification area.

https://www.abim.org/certification/policies/general/special-training-policies.aspx

65.     The ABIM Requirement was set to take effect in 2020, but was suspended until 2022.

66.     Thus, between 2015 and 2022, AOBIM-certified physicians who serve as Program Directors in ACGME-accredited training programs are allowed to certify their residents' eligibility for certification.  However, beginning in 2022, AOBIM-certified physicians will be unable to attest to residents' ability to meet ABIM's certification criteria unless they pass the ABIM examination and maintain their ABIM certification. Although the physician's qualification to serve as Program Director of an accredited training program will not change, residents in the program in 2022 will not be allowed to take the ABIM certification unless the program replaces the AOA-certified physician with an ABIM-certified physician.

**Exclusionary, Harmful Impact on Osteopathic Residents and Physicians**

67.     The ABIM Requirement directly contradicts the ACGME's Common Program Requirements that permit AOA-certified physicians to serve as Program Directors and prepare residents for any ABMS or AOA board examination.

68.     ABIM is an outlier on this issue.  No other ABMS certifying board is barring AOA-certified physicians who serve as Program Directors from attesting to their residents' qualification for the certifying exam or otherwise requiring AOA-certifying Program Directors to pass the parallel ABMS allopathic board examination.

69.     In other words, only Program Directors of internal medicine residency programs and internal medicine subspecialty fellowships will be required to become certified by an ABMS certifying board; AOA-certified Program Directors running residency programs for all other medical disciplines will be permitted to remain in their positions and rely on their AOA certifications.

70.     Moreover, AOBIM-certified Program Directors must pass the full board ABIM examination and participate in ABIM's maintenance of certification program as though they have never been previously board certified in internal medicine.

71.     ACGME's standards require that Program Directors encourage their residents to take the ABMS or AOA certifying board.  However, implementation of a rule requiring an ABIM certification in order to attest to the qualification of residents intending to take the ABIM examination will dissuade residents in the new Single Accreditation System from pursuing an osteopathic board certification and reduce the number of DOs certified by the osteopathic boards.

72.     Since the advent of the single accreditation system in 2015, DOs with osteopathic board certification have served successfully as Program Directors and attested to the qualification of their residents to take both osteopathic and allopathic board certifying examinations.

73.     Since 2015, residents in programs run by AOBIM-certified Program Directors have been successful in taking and passing the ABIM examination.

74.     Since 2015, the ABIM has allowed AOBIM certified Program Directors to certify internal medicine residents to take the ABIM board certification examinations, even though the Program Directors are not ABIM-certified.

75.     In implementing its Requirement, ABIM acknowledges that attestation from an ABIM- certified physician is not necessary.   Since 2015, the ABIM has pressured AOBIM-certified physicians who are Program Directors to take its examinations even though none are asked to provide attestation from an ABIM-certified Program Director.

76.     The curriculum taught and clinical experiences in internal medicine residency programs will not change when an AOBIM-certified Program Director complies with the ABIM Requirement and takes the ABIM examination.

77.     The ABIM has not provided any reason, explanation, supporting data, or other guidance as to why AOBIM-certified Program Directors are now somehow deemed unqualified and will not be trusted to attest to the preparation of the residents they trained beginning in 2022, when they have been successfully doing so for five years.

78.     Because Program Directors must be ABIM-certified, current and future residents in internal medicine residency programs are pressured to take the ABIM examination, rather than the AOBIM examination, since AOBIM certification will limit their ability to become Program Directors and they may be perceived by their peers as less qualified.

79.     As a direct result of ABIM's discriminatory policy, fewer residents will choose to become AOBIM board-certified osteopathic physicians in the future.

80.     Moreover, fewer AOBIM board-certified osteopathic physicians will choose to maintain their AOBIM board certification if they have to maintain ABIM certification to pursue a career in medical education.

**Exclusionary, Harmful Impact on Program Directors**

81.     Not only does the ABIM Requirement damage the reputation of AOA and its certification product among DO and MD residents, but it also has a harmful impact on current Program Directors who are not ABIM-certified but have been able to attest to residents as ABIM-qualified for the last five years.

82.     Because of the ABIM Requirement, Program Directors, many of whom have been practicing as DOs and training DO residents for years, now are arbitrarily required to take the

ABIM examination in order to keep their positions and must participate in ABIM's maintenance of certification program.

83.     The ABIM Requirement causes Program Directors to decide if they want to be diverted from teaching and caring for patients in their practices in order to spend the significant amount of time needed to study for the ABIM examination—and incur the substantial expense associated with taking the examination and investing in study materials.

84.     Program Directors who choose not to attain ABIM-certification either will be removed as Program Directors so that their programs can continue to offer their trainees a pathway to ABIM certification or the residency program may close if the program is unable to hire a new Program Director who is ABIM certified.

85.     As previously stated, studying for the ABIM examination requires a significant investment of time.  Additionally, because Program Directors must pass the ABIM examination, the AOBIM-certified Program Directors need to begin studying and take the examination now or in the near future since they need to obtain their results and take the examination again if needed before the ABIM Requirement causes them to become disqualified to be Program Directors and to lose their jobs.

86.     Many of these previously osteopathic residency programs are providing much needed medical services to underserved communities, and, in some situations, losing a Program Director may result in an inability to find a qualified replacement, which could lead to the closure of the program, thereby diminishing the medical services provided to already underserved communities.

87.     For example, Dr. Judith Lightfoot leads the residency program at Rowan University School of Osteopathic Medicine in Stratford, New Jersey.  Her program is one of the

largest in the country, with 53 internal medicine residents and room for growth.  Dr. Lightfoot

recertified for the AOBIM in 2018.  In addition to her AOBIM certification, Dr. Lightfoot is

certified in infectious diseases and is part of the core teaching faculty in an infectious disease

fellowship program.

88.     Despite the fact that Dr. Lightfoot meets the criteria set by the ACGME to serve

as Program Director and that her residents enjoy a 97% board passage rate, the ABIM has

determined that she will no longer be qualified to attest to her residents' qualifications in 2022.

Dr. Lightfoot will be required to take the ABIM examination or give up her position as Program

Director.

89.     The ABIM Requirement does not only jeopardize Dr. Lightfoot's Program

Director position.  A decision to study for and taking the ABIM also will interfere with Dr.

Lightfoot's ability to study for and take the recertification examination she needs to maintain her

infectious disease certification.

90.     Dr. Joanne Baker has been involved in medical education starting at Genesys

Regional Medical Center's internal medicine residency program since 1994.  Since 2004, serving

as Program Director and Director of Medical Education over an AOA dually accredited program

in Kalamazoo, she was part of the leadership training residents in both an AOA and ACGME

residency.  Under the dual accreditation system, Dr. Baker served as a co-Program Director and

completed all of ACGME's competencies and followed all ACGME rules.  She took over as sole

Program Director of the ACGME residency program in 2017.

91.     Dr. Baker took and passed the ABIM examination in 2020, but at her significant

expense.  Beginning in May of 2019, Dr. Baker had to devote an average of ten hours a week to

studying, and she spent an average of twenty hours per week studying when taking vacation

time.  By the summer before the exam, Dr. Baker's study time increased to twenty hours each

working week and forty hours week of vacation.  Moreover, she spent well over $3,000 to study

for and take the examination.  Before she took the ABIM examination, her residents enjoyed a

100% pass rate on the ABIM examination for the last seven years, demonstrating that she was

entirely capable of preparing residents for the ABIM examination without taking it herself.

Moreover, now that Dr. Baker is double certified, she must grapple with the time and cost

investment needed to maintain both certifications, including keeping up with dual recertification

courses and examination processes.

92.     Dr. Jody Bentley was board certified by the AOBIM in 2006 and has been a

Program Director since 2008.  He was instrumental in expanding the residency program at

Norton Community Hospital in Virginia from 12 residents per year to 30 residents and in

overseeing the program's transition under the Single Accreditation System.

93.     The residency program at Norton Community Hospital that Dr. Bentley has led as

the Program Director now includes both MDs and DOs.  His program successfully trains both

types of residents for board examinations.

94.     Dr. Bentley spends approximately half of his time as a Program Director at

Norton Community Hospital performing administrative work and keeping the residency program

running.  Dr. Bentley spends approximately the other half of his time as Program Director at

Norton Community Hospital working in the hospital's clinic.  These responsibilities prevent him

from taking any additional time that would be necessary to study for and take the ABIM

examination, and the closest facility where he can do so is over an hour away.  As a result, Dr.

Bentley will be forced to lose his job as Program Director at Norton Community Hospital so that

the program's residents will not lose the ability to take the ABIM examination.  Notably, ABIM

certification would not change how Dr. Bentley performs as a Program Director.  If certified, he

would still annually submit his residents' ACGME milestone information to ABIM to

demonstrate their competency to participate in the ABIM examination as he has done for the last

four years.

95.      Either way, the ABIM Requirement will cause the residency program for which

Dr. Bentley serves as the Program Director at Norton Community Hospital to suffer.   The ABIM

Requirement therefore severely diminishes the benefits of Dr. Bentley's knowledge and skills

from 12-years' experience developing and expanding the residency program.

96.      Dr. Erica Kuhn graduated from the OPTI-West/College Medical Center Long

Beach internal medicine residency program in 2006 and has been teaching there as part of the

internal medicine training faculty ever since.  She became the Program Director in 2012 and has

a great affinity for the program.  She was AOBIM-certified in 2006 and completed her

recertification in 2016.  As Program Director, she runs a small community hospital-based

program with 15 total residents in southern California.  Although the program would retain

ACGME accreditation, her program and its residents would be disadvantaged if its residents are

prevented from taking the ABIM examination. Dr. Kuhn has certified prior candidates who

undergo the same training.  Accordingly, Dr. Kuhn's program has decided that it wants its

residents to have the option to take the ABIM examination.  Thus, Dr. Kuhn will lose her job if

she does not take and pass the ABIM examination herself.  The ABIM Requirement represents

the first time in Dr. Kuhn's fourteen years of experience in which her training, background,

experience, or board certification has ever been questioned or called inferior.

97.      Dr. Katrina Platt became an Associate Program Director in 2013.  In 2015, she

was recruited to build a residency program at Desert Regional Hospital; her residency program

opened in 2016.  Dr. Platt gained immeasurable experience building this residency program from

scratch.  The program would be deprived of the benefits of her qualifications and continuity of

experience if she is unable to take and pass the ABIM examination and continue serving as a

Program Director at Desert Regional Hospital.

98.     Dr. Platt's program has 36 residents, each of whom will be taking the ABIM

examination this year.  Though Dr. Platt is deemed qualified to prepare this year's residents for

the ABIM examination and attest to their qualifications, because of the ABIM Requirement, she

will suddenly become unqualified to do so in 2022 and will not only lose her job but her career

because of it.

99.     Dr. Troy Randle has been a Program Director for four years.  Over those four

years, his residents who took the ABIM examination have achieved a 92% pass rate, despite the

fact that Dr. Randle has not himself taken and passed the ABIM examination.  In addition to the

ABIM examination, Dr. Randle would need to take and pass the ABIM's cardiology board

examination in order to comply with the ABIM Requirement.  Given his residents' success in

passing the ABIM examination, the burden on Dr. Randle to take the ABIM and corresponding

cardiology board examination is worthless as well as onerous.  Dr. Randle does not intend to take

the ABIM examinations, and the residents of his program will be prevented from taking the

ABIM examination if the ABIM Requirement is allowed to stand.

100.    Dr. Keith Reich is the fellowship director for an ACGME program in

rheumatology at Franciscan Health Olympian Fields in Illinois.  He is board certified from the

AOBIM in internal medicine and rheumatology, and he has been a Program Director for over

fourteen years.  His fellowship program includes both AOBIM-certified physicians and ABIM-

certified physicians, and his fellows enjoyed a 100% pass rate when seeking board certification in rheumatology in 2019.

101.    Despite the success of his program and his extensive credentials, Dr. Reich is required by the ABIM Requirement to pass the ABIM examination in general internal medicine as well as the ABIM's rheumatology examination.  If he does not take and pass both of these ABIM examinations, Dr. Reich will lose his job.  Because his partners and associates do not meet the requirements to replace him as Program Director, his fellowship program is likely to close, which will limit care to patients in his geographic area.  Moreover, there is a national shortage of rheumatologists, and the closing of his program means there will be fewer rheumatologists entering the workforce.

102.    Each of these AOBIM-certified Program Directors and countless more meet all the criteria set by the ACGME and their hospital-employer for service as Program Director. They have been successfully preparing residents for the ABIM examination, and such residents have attained successful passage rates even though the Program Directors have not taken and passed the ABIM examination themselves.

103.    Neither the Program Directors nor AOA have received any legitimate and lawful rationale from the ABIM for disrupting these physicians' employment and deeming them unqualified to attest to their residents' qualifications beginning in 2022 unless they pass the ABIM examination.

**Harmful Impact on Patients' Access to Options for Receiving Quality Medical Care and Treatment**

104.    There is a physician shortage in the United States.  The shortage is particularly acute in primary care disciplines, such as internal medicine.  Maintaining the existing pool of high-quality training programs and building new programs are essential to correction of this

shortfall.  Qualified and experienced Program Directors are needed to maintain and expand these programs.

105.    In addition to the harmful impact on osteopathic physicians, Program Directors, residents and AOA, the ABIM Requirement significantly limits patients' options for receiving quality medical care and treatment, which causes even greater harm to underserved areas that already face challenges in their access to, and ability to receive, quality medical care and treatment, which osteopathic physicians and AOA strive to help provide.

106.    The ABIM Requirement causes additional harm to underserved and other areas by limiting the valuable options for receiving quality medical care and treatment, given the severe impact of the COVID-19 pandemic on the health of individuals and their access to quality medical care and treatment.

107.    By virtue of the differences in their medical education, DOs and MDs offer different treatment philosophies, techniques, and perspectives.

108.    The coexistence of DOs and MDs and their corresponding philosophies, techniques and perspectives provide patients valuable options for receiving quality medical care and treatment.

109.    The diversity in treatment philosophies, techniques and perspectives provided by DOs enhances patients' access to quality medical care and treatment.

110.    The ABIM Requirement diminishes the value of AOBIM's board certification by limiting the number of opportunities available to physicians certified by the AOBIM.

111.    Thus, the ABIM Requirement discourages residents from taking the AOBIM examination in contravention of the ACGME's standard on Program Evaluation and

Improvement that requires Program Directors to encourage residents to take the applicable ABMS *or AOA* boards.

112.    As a result, the ABIM Requirement hinders patients' access to diverse valuable options for receiving quality medical care and treatment by discouraging residents from becoming board-certified by the AOBIM in internal medicine.

**COUNT I**
**(Declaratory Judgment That The ABIM Requirement Tortiously Interferes With AOA's Business Relationships)**

113.    AOA incorporates the allegations of Paragraphs 1-112 of this Complaint by reference into this count as though fully set forth herein.

114.    An actual controversy exists between AOA and ABIM regarding whether the ABIM Requirement constitutes unjustified interference in AOA's reasonable expectation of fostering and continuing its business relationships with DOs in residency programs.

115.    AOA is entitled to a judicial declaration that the ABIM Requirement unjustifiably interferes in its ability to foster and continue its business relationships with DOs in residency programs.

116.    Specifically, AOA has a reasonable expectation of entering into and maintaining business relationships with the physicians to whom it awards board certification, including participation in osteopathic continuous certification after the physician achieves initial certification.  With the ABIM Requirement, ABIM is pressuring AOBIM-certified Program Directors to become ABIM-certified and abandon their AOBIM certification, knowing that few physicians will see value in maintaining multiple board certifications.

117.    The ABIM Requirement represents ABIM's purposeful interference in AOA's reasonable expectation to retain and offer continuous certification to the physicians it certifies.

118.     ABIM announced the ABIM Requirement despite its knowledge that it would interfere in AOA's ability to retain and grow the AOBIM's certification program

119.     This controversy is ripe for judicial determination because the ABIM Requirement is already causing AOBIM-certified Program Directors to study for and take the ABIM examination if they wish to remain in their positions as Program Directors and to consider their employment options, as well as deterring DO residents from becoming board certified in osteopathic internal medicine.  Thus, Program Directors and AOA's members are already being harmed.

120.     AOA has no adequate remedy at law.

WHEREFORE, AOA respectfully requests that the Court enter judgment in favor of AOA and against ABIM on this count and enter an order that:

    (1) declares that the ABIM Requirement tortiously interferes in AOA's business relationships and AOA's reasonable business expectancy;

    (2) enjoins ABIM from implementing its ABIM Requirement;

    (3) awards AOA compensatory and punitive damages in an amount to be determined at trial;

    (4) awards AOA its reasonable attorney's fees and costs; and

    (5) grants such other and further relief as this Court deems fair and equitable.

**COUNT II**
**(Declaratory Judgment That The ABIM Requirement Tortiously Interferences with the Program Director Plaintiffs' Business Relationships)**

121.     The Program Director Plaintiffs incorporate the allegations of Paragraphs 1-112 of this Complaint by reference into this count as though fully set forth herein.

122.     An actual controversy exists between the Program Director Plaintiffs and ABIM regarding whether the ABIM Requirement tortiously interferes in the Program Director Plaintiffs' reasonable expectation of economic advantage in their business relationships with hospitals and other medicine centers hosting residencies.

123.     The Program Director Plaintiffs have a legitimate business expectation that they will remain Program Directors and will remain qualified for their positions based on the criteria established when they were hired and set by the ACGME.

124.     The Program Director Plaintiffs are currently qualified to serve as a Program Director by virtue of their AOBIM certification.

125.     The ABIM is aware that AOBIM-certified DOs have served, and currently serve, as highly qualified Program Directors.

126.     ABIM was aware that with the Single Accreditation System, AOBIM-certified Program Directors, including the Program Director Plaintiffs, in previously AOA-accredited residency training programs would be serving as Program Directors in ACGME-accredited internal medicine training programs and that such physicians would not be interested in taking the ABIM's certification examination without some external pressure to do so.

127.     ABIM is further aware that AOBIM-certified Program Directors, including the Program Director Plaintiffs, have business relationships with their hospitals and other medical centers, and the legitimate expectation that they can continue to serve in those relationships.

128.     Through the ABIM Requirement, ABIM is intentionally causing osteopathic internal medicine residency programs to impose ABIM-certification as a qualification for their Program Directors.

129.    As a result, the Program Director Plaintiffs, who were previously deemed qualified, will be discharged from their employment as Program Directors or will be prevented from continuing their employment as Program Directors unless they pass the ABIM examination and participate in ABIM's maintenance of certification program.

130.    ABIM's unjustified interference prevents the Program Director Plaintiffs from achieving their legitimate expectation of continued employment in Program Director positions based on their AOBIM certifications.

131.    The Program Director Plaintiffs have no adequate remedy at law.

WHEREFORE, the Program Director Plaintiffs respectfully request that the Court enter judgment in favor of the Program Director Plaintiffs and against ABIM on this count and enter an order that:

(1) declares that the ABIM Requirement tortiously interferes in the Program Director Plaintiffs' business relationships and reasonable business expectancy;

(2) enjoins ABIM from implementing its ABIM Requirement;

(3) awards the Program Director Plaintiffs compensatory and punitive damages in an amount to be determined at trial;

(4) awards the Program Director Plaintiffs their reasonable attorney's fees and costs; and

(5) grants such other and further relief as this Court deems fair and equitable.

## COUNT III
### (Unjust Enrichment - AOA)

132.    AOA incorporates the allegations of Paragraphs 1-112 of this Complaint by reference into this count as though fully set forth herein.

133.    AOA and its Program Directors are conferring a benefit on ABIM by registering for and taking ABIM's board examination and paying the associated fees for initial certification and maintenance of certification.

134.    AOA reasonably expected to grow the amount of fees it receives from board certification examinations and the continuing certification requirements.

135.    ABIM has retained these benefits that it has gained from AOA and its Program Directors, including in the form of increased participation in its board examination and financial gain from fees associated with the registration for the ABIM examination.

136.    ABIM is aware of and appreciates these benefits.

137.    ABIM's conduct has caused it to be unjustly enriched at the expense of AOA and its Program Directors, who receive no benefit from taking the ABIM examination because there is no qualitative difference in Program Directors' qualifications if they pass the ABIM examination instead of remaining AOBIM-certified.  As evidenced by the fact that ABIM has permitted AOBIM-certified Program Directors to prepare residents for the ABIM examination for the last five years, ABIM has effectively conceded that the ABIM Requirement is unnecessary and does not materially impact Program Directors' qualifications.

138.    As a result of the questions raised by the ABIM Requirement about the quality of AOBIM-certified physicians, fewer residents will seek certification from the AOBIM.  The loss of residents seeking AOBIM certification and participating in osteopathic continuous certification represent a pecuniary loss for AOA, which depends, in part, on revenues from board examination and certification fees to operate.

139.    In fact, AOA already has begun to experience a decrease in residents seeking AOBIM certification and the corresponding decrease in board examination fees.

140.    ABIM should consequently be required to disgorge this unjust enrichment.

WHEREFORE, AOA respectfully requests that the Court enter judgment in favor of

AOA and against ABIM on this Count and enter an order that:

(1) requires ABIM to disgorge the amounts by which it has been unjustly enriched,

(2) awards AOA compensatory damages in an amount to be determined at trial;

(3) awards AOA its reasonable attorney's fees and costs; and

(4) grants such other and further relief as this Court deems fair and equitable.

**COUNT IV**
**(Unjust Enrichment – Program Director Plaintiffs)**

141.    The Program Director Plaintiffs incorporate the allegations of Paragraphs 1-112

of this Complaint by reference into this count as though fully set forth herein.

142.    The Program Director Plaintiffs are conferring a benefit on ABIM by registering

for and taking ABIM's board examination and paying the associated fees for initial certification

and maintenance of certification.

143.    ABIM is aware of and appreciates these benefits.

144.    ABIM's conduct has caused it to be unjustly enriched at the expense of the

Program Director Plaintiffs, who receive no benefit from taking the ABIM examination because

there is no qualitative difference in Program Directors' qualifications if they pass the ABIM

examination instead of remaining AOBIM-certified.  As evidenced by the fact that ABIM has

permitted AOBIM-certified Program Directors to prepare residents for the ABIM examination

for the last five years, ABIM has effectively conceded that the ABIM Requirement is

unnecessary and does not materially impact Program Directors' qualifications.

145.    ABIM should consequently be required to disgorge this unjust enrichment.

WHEREFORE, the Program Director Plaintiffs respectfully request that the Court enter judgment in favor of the Program Director Plaintiffs and against ABIM on this count and enter an order that:

(1) requires ABIM to disgorge the amounts by which it has been unjustly enriched,

(2) awards the Program Director Plaintiffs compensatory damages in an amount to be determined at trial;

(3) awards the Program Director Plaintiffs their reasonable attorney's fees and costs; and

(4) grants such other and further relief as this Court deems fair and equitable.

## COUNT V
### (Defamation by Innuendo – AOA)

146.    AOA incorporates the allegations of Paragraphs 1-112 of this Complaint by reference into this count as though fully set forth herein.

147.    When the single accreditation system went into effect and residency programs began hosting DOs and MDs within the same program, AOA-certified Program Directors were permitted to oversee the training of residents to practice internal medicine and prepare residents for AOBIM and ABIM board certification examinations.

148.    Further, ACGME's rules specifically provide that AOBIM-certified Program Directors can serve as Program Directors and are therefore qualified to prepare residents for AOBIM and ABIM board examinations.

149.    The announcement of the ABIM Requirement communicated to the public that DOs certified by the AOBIM no longer would be allowed to serve as Program Directors under the single accreditation system and are, therefore, inferior.

150.    In announcing the ABIM Requirement, the ABIM communicated that despite ACGME's rules, AOBIM-certified Program Directors now will be deemed unqualified to serve

as Program Directors for internal medicine residency programs without ABIM board certification.

151.    This communication inescapably implies that the AOBIM is an inferior board examination and that AOA certifying boards are inferior generally.

152.    The ABIM Requirement and its communication about the ABIM Requirement harm the AOA because the ABIM Requirement severely diminishes and disparages the quality and qualifications of Program Directors certified by the AOBIM.

153.    The ABIM Requirement and its communication about the ABIM Requirement further harm AOA because they discredit the legitimacy of AOA's board certification program.

154.    As a result of the questions raised by the ABIM Requirement about the quality of AOBIM-certified physicians, fewer residents will seek certification from the AOBIM.  The loss of residents seeking AOBIM certification and participating in osteopathic continuous certification represent a pecuniary loss for AOA, which depends, in part, on revenues from board examination and certification fees to operate.

155.    In fact, AOA already has begun to experience a decrease in residents seeking AOBIM certification and the corresponding decrease in board examination fees.

WHEREFORE, AOA respectfully requests that the Court enter judgment in favor of AOA and against ABIM on this count and enter an order that:

(1) awards AOA compensatory and punitive damages in an amount to be determined at trial; and

(2) grants such other and further relief as this Court deems fair and equitable.

## COUNT VI
### (Defamation by Innuendo – Program Director Plaintiffs)

156.    The Program Director Plaintiffs incorporate the allegations of Paragraphs 1-112 of this Complaint by reference into this count as though fully set forth herein.

157.    When the single accreditation system went into effect and residency programs began hosting DOs and MDs within the same program, the Program Director Plaintiffs were permitted to oversee the training of residents to practice internal medicine and prepare residents for AOBIM and ABIM board certification examinations.

158.    Further, ACGME's rules specifically provide that AOBIM-certified Program Directors like the Program Director Plaintiffs can serve as Program Directors and are therefore qualified to prepare residents for AOBIM and ABIM board examinations.

159.    The announcement of the ABIM Requirement communicated to the public that the Program Director Plaintiffs no longer would be allowed to serve as Program Directors under the single accreditation system and are, therefore, inferior due to their AOBIM certification.

160.    In announcing the ABIM Requirement, the ABIM communicated that despite ACGME's rules, AOBIM-certified Program Directors now will be deemed unqualified to serve as Program Directors for internal medicine residency programs without ABIM board certification.

161.    This communication inescapably implies that the Program Director Plaintiffs have been deficient in their responsibilities with respect to attestation of qualification of residents for the ABIM examinations, and that they possess inferior qualifications.

162.    The ABIM Requirement and its communication about the ABIM Requirement harm the Program Director Plaintiffs because the ABIM Requirement severely diminishes and

disparages the Program Director Plaintiffs' qualifications and their ability to serve as Program Directors without ABIM board certification.

163.    As a result of the questions raised by the ABIM Requirement about the quality of the Program Director Plaintiffs, the Program Director Plaintiffs will either lose their jobs or will be forced to seek entry-level board certification in order to be deemed qualified to perform their current duties.

WHEREFORE, the Program Director Plaintiffs respectfully request that the Court enter judgment in favor of the Program Director Plaintiffs and against ABIM on this count and enter an order that:

(1) awards the Program Director Plaintiffs compensatory and punitive damages in an amount to be determined at trial; and

(2) grants such other and further relief as this Court deems fair and equitable.

Dated:  December 30, 2020

SALMANSON GOLDSHAW, PC
Michael J. Salmanson
PA ID 46707
msalmans@salmangold.com
2 Penn Center, Suite 1230
1500 JFK boulevard
Philadelphia, PA 19102
215-640-0593

Attorneys for Plaintiffs

*Pro Hac Vice* Admission to be Sought

MICHAEL BEST & FRIEDRICH LLP
Daniel A. Kaufman,
dakaufman@michaelbest.com

32

Edward Sarskas
sesarskas@michaelbest.com
Christopher R. Parker
crparker@michaelbest.com
Carolyn E. Isaac
ceisaac@michaelbest.com
444 West Lake Street, Suite 3200
Chicago, IL 60606
Telephone: 312.222.0800
Facsimile: 312.222.0818
Firm No. 16519