IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN OSTEOPATHIC ASSOCIATION, et al. | : : : | CIVIL ACTION<br><br>No. 20-6540 |
| v. | : : | |
| AMERICAN BOARD OF INTERNAL MEDICINE | : : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                                **August 19, 2021**

This case arises from the long-standing rivalry between allopathic and osteopathic medicine in the United States. Although the education structure for both disciplines is the same, the pathways are separate. Training in each discipline includes medical school, residency programs, and board certification in specialty areas. Each of these steps was separate and accredited or approved by the respective medical discipline. But in 2014, the Accreditation Council for Graduate Medical Education (ACGME), the organization that accredits allopathic graduate medical education programs, and the American Osteopathic Association, the organization that accredits osteopathic graduate medical education programs, agreed to combine their residency accreditation programs into a single system. Under this single accreditation system, osteopathic board certified physicians were permitted to serve as program directors in the new ACGME-accredited residency programs and train both allopathic and osteopathic residents. After completing the ACGME residency program, residents in internal medicine were qualified to obtain board certification from either the American Osteopathic Board of Internal Medicine (AOBIM) or the American Board of Internal Medicine (ABIM). To obtain ABIM certification, a resident must submit an attestation from the residency program director. And in 2017, ABIM announced it would only accept attestations from program directors who are also ABIM certified. Attestations from AOBIM-certified program directors would not be accepted unless the program directors sat for

and passed the ABIM board certification exam. Plaintiffs, the AOA and seven AOBIM-certified program directors, now bring tortious interference, unjust enrichment, and defamation claims against Defendant ABIM. ABIM moves to dismiss these claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because each of these claims fail, the Court will grant ABIM's motion and dismiss the Complaint.

**BACKGROUND**[1]

Plaintiff American Osteopathic Association (AOA) is a nonprofit organization representing the practice of osteopathic medicine and osteopathic physicians and medical students. The AOA offers a board certification in internal medicine from the American Osteopathic Board of Internal Medicine (AOBIM) The Plaintiff Physicians are all program directors of residency programs who train medical students and prepare them to take board certification exams in internal medicine. Defendant American Board of Internal Medicine (ABIM) is a nonprofit, physician-led organization certifying physicians in internal medicine.

Historically, the AOA accredited osteopathic residency programs. While the Accreditation Council for Graduate Medical Education (ACGME) accredited corresponding allopathic residency programs. After completing an AOA- or ACGME- residency program, residents often seek board certification in their specialty area. Relevant to this case, residents seek board certification in internal medicine from either the AOBIM or ABIM. The only difference in these parallel training paths is ABIM's requirement that residents complete their residency in an ACGME-accredited program, whereas the AOA would certify residents with training from AOA- or ACGME- accredited programs.

---

[1] In evaluating a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citation omitted).

In 2014, the AOA and ACGME created a single residency accreditation system for both allopathic and osteopathic residency programs. The single accreditation system allowed program directors to teach all residents, regardless of whether they were certified in allopathic medicine (by ABIM) or osteopathic medicine (by AOBIM). After residents completed the joint residency program, they could seek certification from either the AOBIM or the ABIM. This required residents to take either the osteopathic certification exam, given by the AOBIM, or the allopathic certification exam, given by ABIM.

Before certifying each resident, ABIM requires a residency program director to attest to each resident's qualification. In response to the single accreditation system, ABIM accepted attestations of qualification from both ABIM- and AOBIM-certified program directors. That changed in 2017, when ABIM announced it would only accept attestations of qualification from ABIM-certified Program Directors beginning in 2022. The announcement stated:

> Beginning in July 2015, for residents and fellows who begin training in an AOA accredited program which receives ACGME accreditation before graduation, all satisfactorily completed years of training will be accepted towards ABIM's initial certification eligibility requirements. To be granted admission to an ABIM certification examination, candidates must meet all applicable training, licensure, professional standing and procedural requirements.
>
> Through its tracking process, FasTrack®, ABIM requires verification of trainees' clinical competence from an ABIM certified program director (other ABMS Board and Canadian certification is acceptable, if applicable). In support of the Single GME Accreditation System, ABIM recognized the need for a change in eligibility policies to allow program directors of newly accredited programs to become certified by ABIM and for a transition period (2016-2021) to allow them to do so. If the program director of a program achieving accreditation through the Single GME Accreditation System is not currently certified by ABIM in the discipline for which he or she is program director, there is now a Special Consideration Pathway which will allow the program director to become certified by ABIM.
>
> During the 2016-2021 transition period, ABIM will accept attestations for ABIM initial certification eligibility criteria from those who are program directors through the Single GME Accreditation System, but who have not yet become ABIM certified. Beginning in 2022, all attestations to ABIM initial certification eligibility

> criteria will need to come from program directors who are ABIM certified. For additional information, please see the "Clinical Competence Requirements" section under each certification area.

Compl. ¶ 64.

Pursuant to this requirement, residents seeking ABIM certification must attend a residency program with a program director who is ABIM-certified. Residents who attend a residency program with a program director who is AOBIM-certified are not eligible for ABIM certification.

In response, the AOA and seven AOBIM-certified program directors filed the instant Complaint on December 30, 2020. The Complaint alleges the ABIM attestation requirement (1) tortiously interferes with Plaintiffs' business relationships (Counts I and II) and (2) unjustly enriches ABIM (Counts III and IV). Plaintiffs also accuse ABIM of defamation by innuendo (Counts V and VI). Plaintiffs make all three claims pursuant to Pennsylvania law.

On its tortious interference claims, the AOA alleges the attestation requirement places pressure on AOBIM-certified program directors to abandon that certification and seek ABIM certification. The AOA asserts "[t]he ABIM Requirement represents ABIM's purposeful interference in AOA's reasonable expectation to retain and offer continuous certification to the physicians it certifies." Compl. ¶ 117. The Plaintiff Physicians also bring a tortious interference claim premised on the ABIM allegedly interfering with their business relationships with residency programs. As AOBIM-certified program directors, the Plaintiff Physicians allege they will be prevented from continuing their employment with residency programs unless they obtain and maintain ABIM certification.

Only one Plaintiff Physician, Dr. Baker, has achieved ABIM certification. *See* Compl. ¶ 91. She did so at great cost: $3000 to study for and take the ABIM exam; up to forty hours a week of studying while taking vacation time; and "grappl[ing] with the time and cost investment needed to

4

maintain both [AOBIM and ABIM] certifications, including keeping up with dual recertification courses and examination processes." *Id.*

Plaintiffs also allege a claim for unjust enrichment. The AOA claims its members have "confer[ed] a benefit on ABIM by registering for and taking ABIM's board examination." Compl. ¶ 133. The AOA also alleges ABIM has knowingly and unjustly retained the exam fees. *See id.* This, according to the Complaint, unjustly enriched ABIM relative to AOA and the Plaintiff Physicians, "who receive no benefit from taking the ABIM examination because there is no qualitative difference in [p]rogram [d]irector's qualifications if they pass the ABIM examination instead of remaining AOBIM-certified." Compl. ¶ 137. In fact, AOA has experienced a decrease in the number of residents seeking AOBIM certification. *See* Compl. ¶ 139. Count IV mirrors Count III, but is on behalf of the Plaintiff Physicians. *See* Compl. ¶¶ 141–45. The Plaintiff Physicians conferred a benefit to ABIM by paying for ABIM certification. They allege the ABIM certification is an "unnecessary" certification from which they get nothing.

Plaintiffs' final claims are for defamation by innuendo. Plaintiffs allege the ABIM attestation requirement on its own and the published announcement of that requirement are defamatory. Plaintiffs allege the statement "inescapably implies [] the AOBIM is an inferior board examination and that the AOA certifying boards are inferior generally." Compl. ¶ 151. For AOA, this resulted in "pecuniary loss" because fewer residents seek AOBIM certification. *See* Compl. ¶¶ 154–55. As for the Plaintiff Physicians, ABIM, "communicated to the public that . . . the [p]rogram d]irectors . . . [are] inferior due to their AOBIM certification" and "deemed [the program directors] unqualified." Compl. ¶¶ 158–160. As a result, the Plaintiff Physicians allege they must either (1) lose their jobs or (2) "seek entry-level board certification." Compl. ¶ 163.

On February 24, 2021, ABIM moved to dismiss all counts of the Complaint for failure to state a claim. *See* Mot. to Dismiss, ECF No. 17. First, the ABIM argues for dismissal of the tortious interference claims because the Complaint fails to plead facts of: (1) intent to harm; (2) causation; and (3) the absence of privilege or justification. Second, ABIM argues for dismissal of the unjust enrichment claims because (1) ABIM has contractual relationships with those who pay its fees, and (2) the Complaint fails to plead facts showing ABIM was unjustly enriched. Lastly, ABIM seeks dismissal of the defamation claims because: (1) they are time barred; (2) ABIM's statement is not reasonably susceptible to defamatory meaning; (3) the announcement was not about Plaintiffs; and (4) the statement is protected opinion. On May 11, 2021, the Court held a telephonic oral argument on the motion.

**DISCUSSION**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678).

All of Plaintiffs' claims fail to meet this standard. The Court will thus grant ABIM's motion and dismiss the Complaint. The unjust enrichment and defamation claims will be dismissed with

prejudice and without leave to amend. The tortious interference claims will be dismissed without prejudice and Plaintiffs will be granted leave to amend to address the deficiencies identified herein.

The Court will dismiss the tortious interference claims (Counts I and II) because the Complaint fails to plead intent to harm. In Pennsylvania, the Restatement (Second) of Torts § 766 governs the law of intentional interference with contractual relationships. *See Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 97 (Pa. Super. Ct. 2009). The Restatement provides an expansive framework for adjudicating tortious interference claims.[2] But the Pennsylvania Supreme Court has only adopted parts of this framework.[3]

---

[2] The Restatement allows causes of action for: intentional interference with a third party's performance of a contract (§ 766); intentional interference with another's performance of his own contract (§ 766A); interference with prospective contractual relations (§ 766B); and negligent interference with contractual relations (§ 766C). *See* Restatement (Second) of Torts §§ 766A–C.

[3] In *Adler, Barish, Daniels, Levin & Creskoff v. Epstein,* the Pennsylvania Supreme Court adopted § 766 of the Restatement (Second) of Torts. *See* 393 A.2d 1175, 1184–85 (1978); *accord Windsor Secur., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 660 (3d Cir. 1993). The Pennsylvania Supreme Court has not, however, adopted § 766A. *See Windsor Secur., Inc.*, 986 F.2d at 660–61. And the Third Circuit predicts the Pennsylvania Supreme Court would decline to do so. *See, e.g.*, *id.*; *Gemini Physical Therapy & Rehab. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 66 (3d Cir. 1994). The Third Circuit pointed out two key differences between § 766 and § 766A. First, § 766A creates a cause of action for a defendant's interference with the plaintiff, while § 766 creates a cause of action for the defendant's interference with a third party. *See Gemini*, 40 F.3d at 66. Second, § 766A calls for a speculative element of proof not required by § 766: causing performance of a contract to be more costly. *See id.*

Governing tortious interference with contractual relationships, § 766B contains two subsections. Section 766B(a) deals with interference directed at third parties. Section 766B(b) deals with interference directed toward the plaintiff. *See Karpf v. Mass. Mut. Life. Ins. Co.*, No. 10-1401, 2018 WL 1142189, at *14 (E.D. Pa. Mar. 1, 2018). According to the Third Circuit, the Pennsylvania Supreme Court has not adopted § 766B in toto. *See Windsor Secur., Inc.*, 986 F.2d at 661. And there is some disagreement over what § 766B claims are actionable in Pennsylvania. Multiple district courts have concluded —based on the Third Circuit's treatment of § 766A—that Pennsylvania law only allows causes of action based on intent to interfere with a third party under § 766B(a), not on intent to interfere with the plaintiff under § 766B(b). *See Karpf*, 2018 WL 1142189, at *16 (collecting cases). On one hand, these courts correctly identify that both § 766A and § 766B(b), unlike § 766, are directed at interference with the plaintiff. On the other hand, these courts ignore that, unlike § 766A, § 766B(b) does not require a speculative element of proof. The weight of district court authority, however, has found that claims under § 766B(b) are not

7

> To adequately state a claim, a plaintiff must allege facts showing:
>
> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

*Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 212 (3d Cir. 2009).

Here, Plaintiffs fail to allege a specific intent to harm. The Complaint alleges two prospective contractual relationships: (1) the employment relationships between the residency programs and the program directors and (2) the AOA's future certification of program directors. To state a claim, Plaintiffs must plead facts showing ABIM intentionally "induce[d] or otherwise caus[ed] a third party not to perform the contract." *Charbonneau v. Chartis Prop. Cas. Co.*, 680 F. App'x 94, 99 (3d Cir. 2017) (citation omitted). Intent can be inferred from a defendant's "purposeful action" when he or she "knows that the interference is certain or substantially certain to occur." *Odyssey Waste Servs., LLC v. BFI Waste Sys. of N. Am., Inc.*, No. 05-1929, 2005 WL 3110826, at *5 (E.D. Pa. Nov. 18, 2005) (quoting Restatement (Second) of Torts § 766, cmt. j.) (internal quotation marks omitted).

Many of the Plaintiff's allegations are conclusory because they reiterate the requirements for recovery. *See Bull Int'l Inc. v. MTD Consumer Grp., Inc.*, 654 F. App'x 80, 102–03 (3d Cir. 2016) (classifying the phrases "tortiously interfere" and "wrongfully terminating" as legal

---

actionable pursuant to Pennsylvania law. As a result, AOA's tortious interference claim (Count I) will be limited to ABIM's intent to interfere with the program directors continuing to contract with the AOA. And Plaintiff Physicians' tortious interference claim (Count II) will be limited to the intent to interfere with the alleged contract between the residency programs and the program directors.

8

conclusions). At best, Plaintiffs allege "ABIM is pressuring AOBIM-certified [p]rogram [d]irectors to become ABIM certified and abandon their AOBIM certification, knowing that few physicians will see value in maintaining multiple board certifications." Even this allegation, however, is threadbare, considering Plaintiffs do not allege who or how ABIM is pressuring program directors. Nevertheless, based on this allegation, the claim is based on ABIM's alleged intention for residency programs to require program directors become ABIM certified.[4]

To adequately plead intent to harm, Plaintiffs must allege ABIM knew residency programs would terminate contracts with program directors who lack ABIM certification. The Complaint only details actions which make it harder for the residency programs to maintain their contractual obligations with AOBIM-certified program directors. Even if the residency programs require ABIM-certification, the program directors can keep their employment if they become ABIM certified. All ABIM has allegedly done is made it more difficult for the residency programs and Plaintiff Physicians to maintain their contractual relationships. This is not sufficient to plead specific intent to cause someone to not perform a contract. The Complaint does not accuse ABIM of telling residency programs to not contract with AOBIM-certified Program Directors. *Cf. Med. Diagnostics Lab'ys, LLC v. Indep. Blue Cross*, No. 16-5855, 2017 WL 3776619, at * 7–8 (E.D. Pa. Aug. 30, 2017) (dismissing a tortious interference with existing relations claim because the

---

[4] The allegation supports two other intentions: (1) for program directors to enter contracts with ABIM; and (2) to make AOA certification so expensive or onerous that program directors would stop contracting with AOA. The first intention is not cognizable under Pennsylvania law; the Restatement (Second) of Torts § 766 does not recognize a cause of action for entering a contract. *See Charbonneau*, 680 F. App'x at 99 (holding that a plaintiff must show the defendant intentionally "induced or otherwise caused a third party not to perform a contract" to recover for a claim of tortious interference with contractual relations). The second intention is not actionable because Pennsylvania law does not recognize claims making performance of a contract more expensive or difficult. *See Windsor Secs., Inc.*, 986 F.2d at 660–61 (stating § 766A provides for an interference that makes performance more expensive or burdensome and stating Pennsylvania Supreme Court has not explicitly adopted § 766A).

9

defendant's action only made it more difficult for a third-party to perform a contract and permitting a claim because the complaint alleged the defendant told businesses to either stop contracting with the plaintiff or face monetary penalties).

Plaintiffs make no allegations regarding specific acts taken by ABIM to support the alleged pressuring of program directors. For instance, tortious interference claims have proceeded when a plaintiff alleges the defendant called customers and told them to stop using the plaintiff's services. *See Med. Diagnostics Lab'ys, LLC*, 2017 WL 3776619, at *7–8. Here, Plaintiff do not allege ABIM is contacting program directors or residency programs. The allegation regarding ABIM pressuring physician thus does not give a rise to an inference of specific intent to harm.[5] The residency programs remain free to choose whether they want to contract with the program directors regardless of their certification status. *See Phillips v. Robertson*, No. 91-2587, 1992 WL 73003, at *4–5 (E.D. Pa. Apr. 1, 1992) (dismissing a tortious interference claim where the defendant published an editorial critical of plaintiff's services but advised readers to "make his or her own decisions about contracting with others" and never expressly told the reader not to contract with plaintiff). The Court will therefore dismiss Plaintiffs' tortious interference claims in Counts I and II of the Complaint.

---

[5] Plaintiffs argue intent to harm can be inferred from their allegations considering the discriminatory history of osteopathic medicine. *See* Pl.'s Resp. to Mot. to Dismiss 10–11, ECF No. 20. The Complaint alleges allopathic medicine was historically favored at the expense of osteopathic medicine. Plaintiffs rely on case law stating a defendant's desire for another company's clientele or employees is sufficient to plead intent to harm. *See, e.g.*, *Am. Trade Partners, LP v. A-1 Int'l Importing Enters., Ltd.*, 757 F. Supp. 545, 555 (E.D. Pa. 1991) (inferring intent from actions to obtain employees from a competitor despite knowledge of non-compete agreements). But that is not what is alleged here. AOBIM-certified physicians are all osteopathic physicians. As a result, the inference is not that ABIM wants osteopathic physicians or AOBIM-certified physicians, but that they want program directors who attest to residents' qualification for the exam to be ABIM certified, regardless of whether they are osteopathic or allopathic physicians.

10

On the unjust enrichment claims, Plaintiffs have failed to allege they conferred a unilateral benefit onto ABIM. A plaintiff may plead unjust enrichment using either a quasi-contract theory, or a tort theory.[6] *See, e.g.*, *Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris*, 171 F.3d 912, 936 (3d Cir. 1999). The quasi-contract theory requires "both (1) an enrichment, and (2) an injustice resulting if recovery for enrichment is denied." *Id.* A plaintiff seeking relief for unjust enrichment resulting from a quasi-contract must plead the following elements:

> (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value . . . The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, [the] focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Hollenshead v. New Penn Fin., LLC*, 447 F. Supp. 3d 283, 292 (E.D. Pa. 2020). Enrichment, as required in the first and second elements of a claim, occurs when a plaintiff "receives anything less than what they paid for." *In re Avandia Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 07-4963, 2013 WL 5761202, at *11 (E.D. Pa. Oct. 22, 2013). A defendant has not been enriched when a plaintiff "purchase[s], receive[s] and use[s]" the product defendant sold. *Mazur v. Milo's Kitchen, LLC*, No. 12-1011, 2013 WL 3245203, at *10 (W.D. Pa. June 25, 2013).

The AOA's unjust enrichment claim is premised on program directors who will pay to take the ABIM's board examination and maintain the certification. *See* Compl. ¶ 134. These allegations, however, do not show AOA conferred a benefit onto ABIM. They state only that physicians and program directors are the ones who pay the fees for ABIM certification. As a result, the AOA's unjust enrichment claim fails. The Court will thus dismiss this claim with prejudice.

---

[6] The Court need not consider tort-based unjust enrichment because the Complaint does not adequately plead a tort claim. The analysis thus addresses only quasi-contract unjust enrichment.

11

Plaintiff Physicians' claim is premised on their payment to ABIM to take the board certification exam and maintain ABIM certification. *See* Compl. ¶ 91. As for Plaintiff Dr. Baker, she paid for the registration fee, sat for the exam, and received ABIM-certification. These allegations show Dr. Baker has bargained to take the ABIM examination and obtain ABIM certification. The only reasonable inference from these facts is her receipt of exactly what she paid for. *Cf. Mazur*, 2013 WL 3245203, at *10 (dismissing an unjust enrichment claim because the plaintiff was dissatisfied with, but nevertheless "purchased, received, and used" dog treats). The other Plaintiff Physicians, however, have not payed to take the exam, and some even indicate they do not intend to. The other Plaintiff Physicians have not alleged they conferred a unilateral benefit on ABIM.

Plaintiff Physicians argue the payment to ABIM is unilateral because they gain nothing from the additional certification. They argue the ABIM certification is superfluous and does not provide them with an enhanced qualification or program curricula. *See* Pls.' Resp. to Mot. to Dismiss 16. Even so, there are no allegations stating ABIM is attempting to provide an enhanced qualification or program curricula by giving its exam and board certification. ABIM is simply providing *its* exam and certification, not a superior certification. To the extent Plaintiff Physicians believe ABIM certification provides them with nothing, the Complaint alleges they would receive the benefit of taking the ABIM exam and eventually, ABIM certification. Plaintiff Physicians may believe it is valueless, but they would still get what they paid for. Moreover, the Complaint alleges multiple times that there are no differences between AOBIM and ABIM certification. As a result, the Court can only infer the Plaintiff Physicians would not be seeking improved qualifications or curricula, but only ABIM certification as provided.

Without an allegation of a unilateral benefit conferred upon ABIM, the Court will dismiss Plaintiff Physicians' claims for unjust enrichment in Count IV.

Finally, on Plaintiff's defamation by innuendo claims, the Court will dismiss them because the announcement is not reasonably susceptible to defamatory meaning. "To establish defamation by innuendo, the innuendo must be warranted, justified and supported by the publication." *ToDay's Hous. v. Times Shamrock Commc'ns, Inc.*, 21 A.3d 1209, 1215 (Pa. Super. Ct. 2011) (citation omitted). Whether innuendo is actionable as defamatory is a question of law. *See Sarkees v. Warner–West Corp.*, 37 A.2d 544, 546 (Pa. 1944); *Remick v. Manfredy*, 238 F.3d 248, 261 (3d Cir. 2001). A court must "fairly and reasonably" construe an alleged defamatory statement using "the natural meaning of the words." *Sarkees v. Warner-W. Corp.*, 37 A.2d 544. 546 (Pa. 1944).

Courts may only dismiss claims for lack of defamatory meaning when "the *only* reasonable interpretation of the statement" is nondefamatory. *Hill v. Cosby*, 665 F. App'x 169, 175 (3d Cir. 2016) (emphasis in original) (citation and internal question marks omitted). A defamatory statement "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him" *Remick*, 238 F.3d at 261 (citation omitted). An announcement contains an actionable implied defamatory meaning when a reasonable recipient could read the statement to imply "the existence of undisclosed defamatory facts." *Hill*, 665 F. App'x at 176.

The Complaint alleges two defamatory meanings.[7] First, the announcement "communicated that . . . AOBIM-certified [p]rogram [d]irectors now will be deemed unqualified

---

[7] This analysis is limited to the ABIM's announcement of the attestation requirement provided in the Complaint. Plaintiffs also allege the ABIM attestation requirement itself is defamatory. *See* Compl. ¶ 162. But the Complaint only includes the ABIM announcement in ¶ 64. Courts cannot determine whether the requirement is capable of a defamatory meaning because the language is not included in the Complaint. The Court therefore considers only whether the announcement

13

to serve as [p]rogram [d]irectors." Compl. ¶ 150. Second, it "inescapably implies" AOA certifying boards and AOBIM-certified [p]rogram [d]irectors are "inferior." Compl. ¶¶ 151–52, 159. The announcement's audience is "individuals in the medical field" familiar with the historical interactions between osteopathic and allopathic medicine as set forth in the Complaint.[8] Pl.'s Resp. to Mot. to Dismiss 18, ECF No. 20.

The statement can only be reasonably and fairly construed as nondefamatory. The announcement communicates an internal decision; after a transition period, ABIM would implement a new attestation requirement. Although the decision is averse to Plaintiffs, the Court cannot speculate as to ABIM's reasons for adopting the policy. And the announcement does not state Plaintiff Physicians are unfit for their jobs, trades, or professions. It simply states ABIM will not accept statements of student qualification from program directors lacking ABIM certification. Even given the history between osteopathic and allopathic medicine, this statement cannot be read to imply undisclosed defamatory facts. *See Puchalski v. Sch. Dist. of Springfield*, 161 F. Supp. 2d 395, 407 (E.D. Pa. 2001) (holding a school district banning the plaintiff from speaking to his former players after his termination "did not clearly communicate any defamatory message"); *cf. Dempsey v. Bucknell Univ.*, No. 11-1679, 2012 WL 1569826, at *14 (M.D. Pa. May 3, 2012)

---

supports a defamation by innuendo claim. Plaintiffs may renew this claim in an amended complaint.

[8] Plaintiffs state that the "intended or expected audience" of the ABIM announcement is those "in the medical field who construe the requirement as an attack on [Plaintiff Physicians'] fitness in their roles and the AOA's ability to certify medical professionals." Pl.'s Resp. to Mot. to Dismiss 18, ECF No. 20. The proper audience may be those in the medical profession who understand the history detailed in the Complaint. But to be actionable as defamatory, the statement must be reasonably viewed by the appropriate audience as attacking the Plaintiff Physicians' fitness. Plaintiff Physicians' cannot limit the intended audience of the announcement to those who *already* ascribe it a defamatory meaning.

(concluding a university announcing the plaintiff's temporary suspension did not, itself, support a defamation claim).

Further, if a defamatory meaning could be afforded to communications of internal decisions averse to other organizations or individuals, then any party who imposes a new requirement on an accreditation or certification would be subject to liability. In *Bull International Inc. v. MTD Consumer Grp., Inc.*, the Third Circuit applied this reasoning in the context of contract termination. *See* 654 F. App'x 80, 106 (3d Cir. 2016). There, the plaintiff brought defamation claims after a company announced it would terminate its contract with him. *See id.* Because allowing the defamation claim would impermissibly extend defamation liability to every situation in which the plaintiff terminated a contract, the Third Circuit affirmed dismissal of the claims for lack of defamatory meaning. *See id.* at 106–07. This case is similar. Drawing defamatory meaning from the announcement would impermissibly extend defamation liability. Accordingly, the Court will dismiss Count V and Count VI of the Complaint.

The Court will grant Plaintiffs leave to amend the Complaint on all claims except the unjust enrichment claims and the defamation by innuendo claims. A court may grant leave to amend a pleading pursuant to Rule 15(a)(2). Rule 15(a)(2) instructs a court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A court can deny leave to amend, however, when the amendment would be futile. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). An amendment is futile when it "could not withstand a renewed motion to dismiss." *Id.* (internal quotations omitted).

Any amendment to the AOA's unjust enrichment claim would be futile because there is no plausible basis for the AOA, an organization, to pay ABIM to take a board certification exam. Amendment to Plaintiff Physicians unjust enrichment claims would also be futile because the

Case 2:20-cv-06540-JS   Document 24   Filed 08/19/21   Page 16 of 17

entire premise of the claim is based on fees paid to take the ABIM board certification exam and obtain certification. Because they are receiving the benefit offered by ABIM, their unjust enrichment claims fail regardless of any additional facts. And for some of the Plaintiff Physicians, they have not even alleged they intend to take the ABIM exam. There is thus no basis for finding a unilateral benefit conferred upon ABIM.

As for the defamation by innuendo claims, amendment would be futile because the Court determined as a matter of law that the announcement is not defamatory. Because Plaintiffs have provided the full announcement, there is no reason to allow defamation claims to proceed on the basis of the announcement alone. Regarding Plaintiffs' defamation claim based on the attestation requirement itself Plaintiffs may amend that claim to include whatever language they allege is defamatory. The remaining claims will be dismissed without prejudice and Plaintiffs will be granted leave to amend the Complaint to address the deficiencies identified in this Memorandum.

**CONCLUSION**

In sum, the Court will grant ABIM's motion to dismiss. Plaintiffs' tortious interference claims will be dismissed because they have failed to allege an intent to harm. Those claims will be dismissed without prejudice. Plaintiffs' unjust enrichment claims will be dismissed with prejudice because the Plaintiffs fail to plead any unilaterally conferred benefit to ABIM. The defamation by innuendo claims will be dismissed with prejudice because the ABIM's statement is not reasonably susceptible to a defamatory meaning as a matter of law. Plaintiffs will be granted leave to amend the claims dismissed without prejudice.

An appropriate order follows.

BY THE COURT:


\_\_/s/ Juan R. Sánchez_____
Juan R. Sánchez, C.J